No. 13,750.

Younge *v.* Sutton.
(61 P. [2d] 1370)

Decided September 21, 1936. Rehearing denied November 2, 1936.

Messrs. Langdon & Barbrick, for plaintiff in error.

Messrs. Lee, Doud & Griffith, for defendant in error.

*In Department.*

Mr. Justice Holland delivered the opinion of the court.

Sutton instituted this action to clear the title to certain real estate which had been sold under execution upon a judgment obtained by Younge against the Pueblo Industrial Company, a holding corporation for Sutton and family. He claimed title by virtue of an unrecorded deed,

and attacked the judgment against the Pueblo Industrial Company on the ground of defective service of summons, alleging also that Younge, the judgment creditor, knew that he, Sutton, was the owner and in possession, and that the levy, execution and sale, was with full knowledge of these facts. Plaintiff prevailed below, the trial court finding that the judgment attacked was rendered on defective service and that all proceedings thereunder were void. Younge assigns error.

January 19, 1929, Sutton personally paid $26,000 for the BX ranch, which is involved in this controversy, and had the deed of conveyance made to the Pueblo Industrial Company. This was done, according to Sutton's testimony, for the convenience of himself and family. The company paid no money for the conveyance, but was to pay Sutton the $26,000 out of the proceeds of its business, that of selling smelter slag. The company did not realize anything from its business to pay Sutton and redeeded the property to him. This deed remained unrecorded until after execution and levy upon the property under Younge's judgment against the Industrial Company. Immediately following the transaction wherein Sutton had the BX ranch conveyed to the Industrial Company, the latter, April 1, 1929, contracted with Younge for the purchase from him of a 600 acre ranch known as the McMillan ranch, for a consideration of $19,000, of which $2,000 was paid. In November, 1930, the Industrial Company, being in default on its payments under the contract with Younge, was sued by Younge for the balance of the unpaid purchase price. At this time Sutton was vice president and general manager of the Industrial Company and its principal owner, an office being maintained in the Central Block, Pueblo, Colorado. Summons was issued and a private process server made several attempts to serve Sutton at the office, and after several calls without success, Mrs. H. A. Gossin, then in charge of the office, inquired into the nature of the caller's business and upon being informed that he had

a summons for the Industrial Company, he testified that she told him she was the secretary and could accept service, whereupon he delivered a copy of the summons together with a copy of the complaint to her on November 6, 1930. Immediately thereafter, Sutton returned to the city and Mrs. Gossin delivered him the summons and complaint, which he took to the office of Younge's attorney and inquired as to how judgment could be taken against the Industrial Company if it had given up the land, and asked that the taking of judgment be delayed to give either he or the company an opportunity to raise the money. The matter was delayed from time to time until January 14, 1931, when the attorney for Younge wrote the Industrial Company, directed to the attention of Sutton, to the effect that it present its defense within five days or judgment would be taken. January 17, the attorney again wrote to Sutton advising that he would proceed to take judgment. January 22, judgment by default was entered against the Industrial Company for $18,-844.50. After judgment, Sutton requested that collection thereon be delayed and made special request that no transcript be filed, as such might interfere with a proposed deal whereby he might raise money to clear up the matter. March 5, transcript of judgment was filed in the recorder's office and thereafter Sutton made several assurances that he would be able to raise the money to pay the judgment and requested that execution be withheld, all of which requests were complied with until September 17, 1931, when a writ of execution issued and levy was made on the BX ranch the following day. The attorney advised Sutton of the levy and that October 31 was the date set for sale. On October 31, Sutton requested the sheriff to postpone the sale and was advised that if he signed a written request for postponement same would be granted. He did not sign the request and the land was sold to Younge, the judgment creditor. The quitclaim deed from the Industrial Company to Sutton conveying the BX ranch bore date January 10, 1930, was acknowl-

edged January 20, 1931, and was filed of record November 2, 1931. Sutton filed this suit to set aside the sale made by the sheriff, and to cancel the certificate of sale and all other instruments issued in connection therewith, as clouds upon his title. January 7, 1932, sheriff's deed issued to Younge pursuant to the sale.

Upon a trial to the court without a jury, the court found that no valid service of summons was had upon defendant in the case of Younge v. The Pueblo Industrial Company, and therefore the judgment entered therein was void and all proceedings thereunder including the sale of the real estate, the certificate of sale and the sheriff's deed to Younge are null and void and entered its decree finding the title in Sutton.

The two questions presented and discussed are: (1) The validity of the judgment against the Industrial Company which is attacked on account of alleged defective service; and (2) the effect of the unrecorded deed from the Industrial Company to Sutton, as against Younge the execution creditor, claimed to be good where Sutton was in open and exclusive possession of the property which he claims was well known to Younge prior to the execution and levy.

 The manner of service of summons upon private corporations is set out in chapter 171, Session Laws of 1927. Paragraph 7 of section 1 of this chapter is a reenactment of the 1891 amendment of section 38 of the code of 1887, by the addition of the word "other" before the word "general agent," and is as follows: "If the action be against a private corporation, by delivering a copy of the summons to the president or other chief officer of such corporation, or to the secretary, treasurer, cashier or other general agent thereof; * * *."

It is undisputed that the Pueblo Industrial Company was almost entirely owned by Sutton and family and the record does not disclose any formal meetings of the stockholders or directors of the company as ever having been held. The annual report of March 1, 1930, required

to be filed with the secretary of state, designates Sutton, the defendant in error, as first vice-president, H. A. Gossin, assistant secretary, and lists the BX ranch as part of the company assets. The report for March, 1931, is identical, with the addition that "there is unpaid upon the above property * * * BX ranch $26,000." These reports are signed by Sutton as vice-president and H. A. Gossin as assistant secretary. No person is designated therein as secretary. Sutton testified that his daughter, Katherine S. Wandell, was secretary of the company during the year 1930, and she testified that she never was present at any meeting at which she was elected and that all she knew about it was that her father told her she was secretary; that so far as she knew, Mrs. Gossin attended to all of the company business at the office and the only document she ever signed as secretary was a deed from the company to her father. Sutton admits receiving the summons and complaint from Mrs. Gossin and that he talked at various times with the attorney for Younge concerning holding off the entire matter, and that he requested that the taking of judgment be postponed and that after judgment, he requested that no transcript thereof be filed; that he also requested postponement of the sale under the execution. In other words, Sutton apparently did all of the things for the company that would have been done had he been served as its vice-president. It is undisputed that for all practical and beneficial purposes, Mrs. Gossin, upon whom the summons was served, was in fact the secretary; that the company received the benefits of her services as such; that she was in active charge of the office, and the process server testified that she told him that she was the secretary and could accept service. So far as knowledge of the commencement and pendency of the litigation is concerned, the company, under the admitted facts, was in as good position to protect itself as though Sutton, the vice-president, had been actually served with process. All purposes of the service of a summons, so far as the com-

pany is concerned, were fulfilled. It had full opportunity to present a defense, if any it had, or to attack the validity of the service of summons. Sutton took all of the natural and usual steps in such circumstances except to present to the court the claim that he first asserted long after judgment, execution and sale. These were matters in which means of protection are provided by law and Sutton now asks a court of equity to do for him the thing he, with full opportunity, failed to do for himself. Such neglect rightfully bars equitable relief.

From a further study of the code provision, supra, it is evident that the officers of a private corporation are therein treated as the general agents thereof for the purposes of the code provisions, and the amendment that found its way into the present provision, contemplates, from the use of the words "other general agent," that if a certain person is named by the company as "assistant secretary" and that position is officially held by him, the acts of such person as a company official, such as the signing of reports required by law, are relied upon by the company as official acts, even if such person is not held to be a "chief officer" of such company, it surely cannot successfully be contended that when acting for the company and in charge of its business, he is not a general agent of the company especially for the purpose of the service of process where the company has immediate notice of such act and recognizes the service without complaint or protest within the time afforded therefor, accepts the present benefits, and delays its protest to the injury of others, as in the case at bar.

Under all the circumstances of the case, no such equity is presented as requires any interference by the court, therefore, the judgment against the Pueblo Industrial Company, based upon the service of which complaint is made, is a just judgment. It was not taken in a surprising way, but with full knowledge of the party acting for the company — in law its agent — and therefore must

stand. The finding of the trial court to the contrary was erroneous.

The validity of the judgment having been established, the determination of the question of the rights of an execution creditor thereunder as against an unrecorded deed, must follow.

At the time Younge sold the McMillan ranch to the Industrial Company, Sutton and family were in possession of the BX ranch, title to which admittedly was rightfully in the Industrial Company. It was later that Sutton claims the Industrial Company failed to pay him for the BX ranch and thereupon redeeded the property to him. There was no such change of ownership as would put one subsequently dealing with the title on notice as to the particular interest the party in possession might have in the fee. Sutton's testimony discloses that he was in possession without title, and after the unrecorded deed was executed to him he remained in possession, and the record does not indicate any change in the character of that possession. It is not claimed by Sutton that Younge, the judgment creditor and purchaser at the execution sale, then had any notice of the deed Sutton claims was delivered to him. If such a deed was delivered, Sutton knew of it, and if it was unrecorded, he knew that the record title still stood in the name of the Industrial Company at the time the suit had been brought against the company; he knew that judgment was taken against the company; he knew that the transcript of the judgment, after being held up on his request, was filed about six weeks after the date of the judgment; he knew that on a like request, execution was delayed; he knew that he requested and was granted a delay upon his endeavor to pay the judgment, all of which consumed some eight or nine months time after the judgment; he knew that levy had been made on the ranch in his possession, and he knew that he had requested a delay of a sale thereunder, all without at any time making the claim that he was the owner by virtue of the deed from the company to him,

until just prior to the issuance of the sheriff's deed, and he did not record his deed until after the execution sale. Younge's rights in the premises as to title under the sheriff's deed, now in question, accrued at the date of the levy, and to prevent estoppel, now claimed by Sutton, it was the latter's duty to disclose all knowledge immediately after the commencement of the suit by Younge which resulted in the judgment, execution, sale and deed. There was nothing inconsistent with the possession by Sutton, after he claimed the deed was delivered, to the possession which he enjoyed prior to the execution of such deed, and nothing inconsistent with the possession enjoyed under the record as well as the actual ownership. Furthermore, Sutton, as an officer of the company, was a party to the report made to the secretary of state as late as March, 1931, wherein the BX ranch was represented to the public as being owned by the Industrial Company. These circumstances lead us to the conclusion that Younge was a bona fide purchaser of the BX ranch at the execution sale under his judgment without notice of the claims now asserted by Sutton, and as such, his title is superior to that claimed by Sutton through the unrecorded deed, which determination compels a reversal of the judgment of the trial court.

Judgment reversed.

Mr. Chief Justice Campbell and Mr. Justice Burke concur.